IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, Plaintiff, v. EDWARD AARON HARVEY, JR., Defendant. | *E-FILED - 1/5/07* <br> No. CR-05-00373 RMW <br> ORDER DENYING MOTION TO SUPPRESS STATEMENTS <br> [Re Docket Nos. 37] |
|---|---|

Defendant Edward Harvey moves to suppress statements made to law enforcement agents during a search of his residence on September 2, 2004.[1] Defendant contends that because he was subject to a custodial interrogation without being advised of his *Miranda* rights, the statements are inadmissible. The court has considered the moving and responding papers and the arguments of counsel. The court hereby denies the motion to suppress statements as it finds that defendant made the statements voluntarily and not in a custodial setting.

---

[1] Defendant's motion and declarations inadvertently state that the search occurred on August 28, 2004 as does the court's Order Denying Motion to Suppress Evidence Seized dated November 8, 2006. The correct date is September 2, 2004.

ORDER GRANTING MOTION TO SUPPRESS STATEMENTS
NO. CR-05-00373-RMW

## I.  BACKGROUND FACTUAL FINDINGS

On September 2, 2004, five Federal Bureau of Investigation agents executed a search warrant at defendant's apartment in Canton, Michigan.[2]  The agents arrived at defendant's apartment at around 7 a.m. and four of them initially entered after receiving no response to their knock and announcement.  They used a passkey obtained from the landlord the night before.  They had their guns drawn but immediately holstered them after locating the occupants.  Harvey was found by Agent Nestelroad in his bedroom getting dressed and was brought into the kitchen area where he was asked to sit at the kitchen table with Agent Opperman and Agent Nestelroad.

Agent Opperman, the lead agent, explained to Harvey that the agents were executing a federal search warrant looking for child pornography.  Harvey was asked if he had any questions and if he wanted to talk.  He was not given any advisement of rights pursuant to *Miranda*.  Harvey engaged in conversation with the agents and initially denied that he was involved in child pornography.

Later in the interview, Agent Opperman was brought some images of child pornography that one of the searching agents found in Harvey's bedroom and Opperman showed them to Harvey. Harvey then asked whether he would be arrested that day if he told the truth and Agent Opperman assured Harvey that he would not be arrested that day because the case was being handled by the FBI in California.  Harvey then proceeded to make detailed incriminatory statements.

Agents Opperman and Nestelroad talked with Harvey from approximately 7:00 a.m. to 9:20 a.m. while two other agents searched the premises.  The fifth agent, Agent Foltz, who had entered later and never had his gun out, initially watched the front door and kept an eye on evidence that had been seized during the search and placed near the entrance to the apartment.  Later he went to the master bedroom where two other occupants had been located.  He stayed with them until they left after being told they were free to leave but, if they did, they could not come back until after the search had been completed.  When they left, Agent Foltz escorted them to the door.  Paula Earle,

---

[2] Although the parties to a large extent agree on what occurred during the search, there are some discrepancies concerning what was said.  The court has resolved those discrepancies in its findings.

Harvey's then girlfriend and now wife, arrived during the search and went to a bedroom accompanied by an agent and then left. She did not speak to Harvey, nor did Harvey attempt to speak to her. Harvey was aware that the agents had found a nude photograph of Ms. Earle's daughter with whom Harvey admitted he had been having sexual relations. He asked Agent Opperman if he was going to tell Ms. Earle about the photograph and he assured Harvey that he did not intend to do so and what Ms. Earle was told was up to Harvey.

The interview with Harvey was calm and professional and no threats of any kind were made. Harvey was permitted to smoke, get up and get a drink and go to the bathroom. When he went to the bathroom he was accompanied by an agent for security and safety reasons.

Harvey was not told expressly one way or another as to whether he was free to leave or whether he had to speak with the agents, although he was asked initially if he wanted to talk and immediately engaged in conversation. During the course of the interview, Harvey never asked whether he could leave or said anything suggesting that he wanted to go. After the search was completed, Harvey was given a receipt for the materials taken and the agents left.

On November 8, 2006, this court denied defendant's motion to suppress evidence seized from the September 2, 2004 search. The court now rules on defendant's motion to suppress the statements he made during the search.

## II. ANALYSIS

The critical question is whether defendant was in custody and thus did not voluntarily make his incriminating statements. The court concludes that he was not in custody.

**1.    Defendant Was Not "In Custody" for *Miranda* Purposes**

*Miranda* requires that a person must be advised before being subjected to custodial interrogation that he has the right to remain silent, that statements made can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed. *Miranda v. Arizona*, 384 U.S. 436 (1966). *Miranda* protections are triggered "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (internal quotation marks omitted). "[I]n custody" means "'formal arrest or restraint

ORDER GRANTING MOTION TO SUPPRESS STATEMENTS
NO. CR-05-00373-RMW

3

on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983).  It requires a determination of whether "the officers established a setting from which a reasonable person would believe that he or she was not free to leave." *United States v. Kim*, 292 F.3d 969, 973-74 (9th Cir. 2002), *quoting U.S. v. Beraun-Panez*, 812 F.2d 578, 580 (9th Cir.), *modified*, 830 F.2d 127 (9th Cir. 1987) (finding interrogation "custodial" and occurring "in a police-dominated atmosphere," where police questioned defendant outdoors in a remote rural area isolated from public view and sent away an approaching co-worker).

The Ninth Circuit has identified several factors relevant to the "in custody" determination:

> (1) the language used to summon the individual, (2) the extent to which the defendant is confronted with evidence of guilt, (3) the physical surroundings of the interrogation, (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual.

*Kim*, 292 F.3d at 974, *quoting United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001); *see United States v. Madoch,* 149 F.3d 596, 600 (7th Cir. 1997) (finding defendant "in custody," where armed FBI agents rushed into defendant's home at 7:00 a.m. pursuant to search warrant, ordered defendant to stay in the kitchen and not leave, handcuffed her husband, did not allow her to answer the phone, permitted defendant to go to bathroom, with an escort, to pump breast milk for her baby only after three-and-one-half hours and interrogated defendant for five-and-a-half hours without giving *Miranda* warning).

In *Kim*, the Ninth Circuit "conclude[d] that Kim was 'in custody' for *Miranda* purposes because a reasonable person in Kim's circumstances would not have felt free to leave." *Kim*, 292 F.3d at 974.  Kim arrived at her store and saw a number of police and other official looking vehicles.  *Id*.  The police allowed Kim into the store, but locked the door behind her leaving her husband outside.  *Id.* at 971.  The police directed her to sit separately from her son and restricted her from communicating with her son, even though the police knew Kim could not understand English well.  *Id.*  Two officers sat with Kim during her interview.  *Id.* at 972.  Although the police claimed they told Kim she was free to leave, the district court specifically rejected that testimony. *Id.* at 973.  The court applied the *Beraun-Panez* factors, first finding that although the police did not summon Kim to her own store, neither did she submit to questioning voluntarily.  *Id*. at 974.  Next, the court

ORDER GRANTING MOTION TO SUPPRESS STATEMENTS
NO. CR-05-00373-RMW

4

reasoned that Kim's isolation from both her husband and son neutralized the familiarity of the location as a factor. *Id*. at 977. The court noted the locked doors and restriction on Kim's movement. *Id*. The court also considered Kim's 50-minute interview "a full-fledged interrogation." *Id*. Finally, the court reasoned that the police "temporarily took over complete control of Kim's store and created 'a police-dominated atmosphere.' in which the police kept Kim physically isolated from two family members who could have provided support, and, given her limited English, a more complete understanding of the overall circumstances." *Id*.

Here, the agents' conduct was not intimidating as it was in *Kim*. Harvey was a native English speaker and fully understood the agents who remained calm and professional during their interview with Harvey. The agents did not forcibly separate Harvey from his family members. Harvey was also asked if he wanted to talk and was specifically told before he made any incriminating statements that he would not be arrested that day.

Applying the relevant *Beraun-Panez* factors to the instant case, the court finds that defendant was not "in custody."

### 1. The Language Used to Summon Harvey

Agent Nestelroad escorted Harvey to his kitchen table where he was informed as to what was going on and asked if he had any questions and whether he wanted to talk. Before he made any incriminating statements, he was told he would not be arrested that day. This factor suggests Harvey was not in custody.

### 2. The Extent to Which Harvey Was Confronted With Evidence of Guilt

Although Harvey was not initially confronted with evidence of guilt beyond the existence of the search warrant, he was later confronted with evidence of pornography. This factor would tend to suggest he was in custody at the time of the confrontation except for the fact that he was told at that time that he would not be arrested that day.

### 3. The Physical Surroundings of the Interrogation

Although Harvey was in his own residence, the presence of the officers and their control of the premises during the search undoubtedly lessened the comfort Harvey would have

ORDER GRANTING MOTION TO SUPPRESS STATEMENTS
NO. CR-05-00373-RMW

1  otherwise had from being in his own home. Although other residents left the apartment during the
2  search and Harvey never asked if he could, the physical surroundings of the interview were probably
3  somewhat intimidating.

### 4. The Duration of the Detention

Harvey was not detained in the sense he was not prohibited from moving or leaving the premises. The duration of the interview was neither short nor unduly long and the duration does not shed much light on the question of whether Harvey was in custody.

### 5. The Degree of Pressure Applied to Detain Harvey

No pressure was applied to Harvey to detain him. It appears that the only pressure was what Harvey placed on himself in his attempt to curry favor with the agents by being as cooperative as possible.

A review of all the surrounding circumstances shows that Harvey was not in custody for *Miranda* purposes. The one factor tending to suggest he was in custody, specifically that he was interviewed when the agents had control of his apartment, does not show there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *See Stansbury*, 511 U.S. at 322. One California case, *People v. Wilson*, 268 Cal.App. 2d 581, 586 (1968), holds that a person whose home is being searched with a warrant that also allows for search of the person is in custody for *Miranda* purposes. No federal case has been found that goes that far. In any event, the circumstances here did not call for a search of the person, nor was the defendant in *Wilson* advised that she would not be arrested that day.

### III.  ORDER

For the foregoing reasons, the court denies defendant's motion to suppress statements made during the search of his residence on September 2, 2004.

DATED:  1/4/07

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

ORDER GRANTING MOTION TO SUPPRESS STATEMENTS
NO. CR-05-00373-RMW

**Copy of Order electronically mailed to:**

**Counsel for the Government:**

Shawna Yen                              shawna.yen2@usdoj.gov

**Counsel for Defendant:**

Jay Rorty                                jay_rorty@fd.org


Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

Dated: 1/5/07                           _____
                                         Chambers of Judge Whyte

ORDER GRANTING MOTION TO SUPPRESS STATEMENTS
NO. CR-05-00373-RMW

7